UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **KEITH COFFEE** | **CIVIL ACTION NO. 09-1532** |
| **FED. REG. #55692-004** | |
| **VS.** | **SECTION P** |
| | **JUDGE MINALDI** |
| **WARDEN J. P. YOUNG** | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Keith Coffee filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241 on August 28, 2009. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP) and is incarcerated at the Federal Corrections Institute (FCIO), Oakdale, Louisiana and he complains that he has been recommended for only sixty to ninety day placement in a Residential Re-entry Center (RRC) instead of the maximum placement of twelve months, and that his Unit Team is constantly changing the reasons supporting their placement recommendation.

In his amended petition, filed on January 25, 2010, petitioner prayed that the Court grant his petition for *habeas corpus* and order ". . . Warden J.P. Young . . . to release Petitioner to a Residential Reentry Center, in the State of Georgia . . . ." Doc. 5, p. 23.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

1

*Background*

In July 2001 petitioner pled guilty to conspiracy to distribute 5 kilograms or more of cocaine and conspiracy to commit money laundering in the United States District Court for the Middle District of Tennessee. He was sentenced to serve concurrent sentences of 131 months in the custody of the BOP. *United States of America v. Keith Coffee*, No. 3:01-cr-00038.

On July 14, 2009, petitioner's Unit Team at FCIO recommended sixty to ninety days RRC placement. Doc. 1, p. 9. According to petitioner's amended complaint, he was also informed on that date that his expected release date was November 4, 2010. On July 21, 2009, petitioner submitted a BP-8 or informal administrative remedy procedure grievance complaining that he was entitled to from six months to one year RRC placement. On July 29, 2009, petitioner submitted an Inmate Request to Staff complaining that he was being denied access to the Administrative Remedies Procedure based upon staff's failure to answer his July 21, 2009, informal grievance. Doc. 1, p. 8.

On August 12, 2009 the Unit Manager and Corrections Counselor advised petitioner that "prior charges determined his length of [RRC] placement." Doc. 1, p. 7. According to the Informal Resolution Form, petitioner was provided a BP-9 form on that same date. *Id.*

On August 17, 2009 petitioner submitted the BP-9 grievance complaining that the Unit Team's recommendation was arbitrary and capricious because petitioner was a first time offender and had no prior arrests or convictions. Doc. 1, p. 6

The Petition for Writ of Habeas Corpus presently under consideration was filed August 28, 2009, having been signed by petitioner August 20, 2009, and mailed August 25, 2009. Doc. 1. On January 25, 2010, petitioner filed an amended petition along with exhibits. Doc. 5. In the

amended complaint petitioner again alleged that his expected release date is November 4, 2010 and, that he was advised that he could only expect 60-90 days of RRC placement in advance of his release date. Plaintiff claims to have been also advised that FCIO's policy was that no prisoner would receive more than six months RRC placement and any recommendation for placement beyond that amount would require the special approval of the BOP's Regional Director.  Doc. 5, p. 5.  Petitioner then detailed his efforts to exhaust the BOP's Administrative Remedies Procedures and alleged further that the BOP Administration purposefully delayed responding to each step of the process, thus rendering the administrative remedy process futile. Doc. 5, pp. 5-10.

## *Law and Analysis*

**1.     *Proper Remedy***

A federal prisoner may challenge the manner in which his sentence is being executed by filing a petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241 in the judicial district where he is incarcerated.  More specifically, and *apropos* to the instant petition, a prisoner may utilize the provisions of §2241 to challenge the BOP's refusal to authorize his placement in Residential Re-entry Center (RCC), Community Corrections Center (CCC) or halfway house.[1]

**2.      *Exhaustion of Administrative Remedies***

Prisoners who complains of a BOP refusal to authorize placement must first exhaust

---

[1] See the excellent discussion in *Mihailovich v. Berkebile*, 2007 WL 942091 – an unpublished opinion of the United States District Court for the Northern District of Texas. In that case, a BOP inmate challenged the BOP's denial of placement in a RCC. The Court concluded "... as noted in [*Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. 2005)], confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC. 432 F.3d at 243-44. In light of [*Sonnier v. Francis*, 217 Fed. Appx. 410 (5th Cir. 2007)] the other cited cases, the facts of [*Carson v. Johnson*, 112 F.3d 818 (5th Cir.1997)], and petitioner's lack of recourse, the Court finds that petitioner properly invoked jurisdiction under § 2241."

administrative remedies before presenting those claims in federal court. See *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994). The BOP provides a three-step administrative procedure for inmates who seek formal review of their complaints. See 28 U.S.C. §§ 542.10-542.19. BOP Program Statement (PS) 1330.13, Administrative Remedy Program, outlines the procedure and provides detailed guidance regarding the procedures to be employed. Prisoners may first "seek informal review of an issue which relates to any aspect of [their] confinement." 28 C.F.R. § 542.10. If unsuccessful, prisoners must thereafter utilize the formal procedures which involve the filing of a BP-9 (to the Warden), BP-10 (to the appropriate BOP Regional Office), and BP-11 (BOP National Inmate Appeals) form. *Id. §§ 542.13*, 542.14, 542.15, 542.18. The BP-11 appeal "is the final administrative appeal." *Id. § 542.15*(a). When this three-step review process is complete, the federal inmate's claim can be considered exhausted.

Only when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action" are inmates exempted from the requirement that they exhaust administrative remedies prior to proceeding with a *habeas* action in court. *Fuller*, 11 F.3d at 62 (citation omitted). Such exceptions to the exhaustion requirement "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." *Id.* (citations omitted). Thus, if a BOP inmate demonstrates an applicable exception to the exhaustion requirement, he may obtain a merits ruling on his § 2241 petition despite a lack of exhaustion. *Id.*

A BOP inmate does not exhaust administrative remedies until such time as he completes the entire three-step process culminating in the rejection of the BP-11 at the national level.

Petitioner filed his first step grievance with the Warden on August 17, 2009. Doc. 1, p. 6. Apparently while that grievance was pending petitioner filed the instant suit.

It also appears that after filing suit petitioner thereafter attempted in good faith to comply with the administrative requirements of the BOP. Therefore, for the purposes of this Report, it will be assumed that petitioner has substantially complied with the requirement that he exhaust administrative remedies prior to filing suit.

*3.  RRC Placement*

In order to state a claim for relief pursuant to 28 U.S.C. §2241, a *habeas corpus* petitioner must allege and ultimately establish that he is in custody in violation of the Constitution and laws of the United States and the *habeas* petitioner has the burden of proof.

Petitioner complains that the prison administration have not taken seriously the provisions of the Second Chance Act (PL 110-199) and thus implies that he was deprived of liberty without due process. Petitioner's claims are conclusory at best and thus insufficient to establish that the decision making process of the prison administration was flawed or otherwise violated the Constitution or laws of the United States.

The Second Chance Act amended 18 U.S.C. §3624(c)(6) and directed the Director of the BOP to issue regulations to

> . . . ensure that placement in a community correctional facility by the [BOP] is –
> (A)   conducted in a manner consistent with section 3621(b) of this title;
> (B)   determined on an individual basis; and,
> (C)   of sufficient duration to provide the greatest likelihood of successful reintegration into the community...

Title 18 U.S.C. §3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility . . .

5

    considering–
- (1) the resources of the facility contemplated;
- (2) the nature and circumstances of the offense;
- (3) the history and characteristics of the prisoner;
- (4) any statement by the court that imposed the sentence –
  - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
  - (B) recommending a type of penal or correctional facility as appropriate; and
- (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 . . .

The BOP has promulgated Rules for the implementation of the Second Chance Act of 2007. See 73 Fed. Register 62443, 28 CFR Part 570, October 21, 2008. According to Section 570.22 these rules direct that the regulations be implemented to ensure that placements in community confinement are done ". . . in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community . . . ." The regulations further specify that with regard to the determination, the factors outlined in §3621(b) set forth above, i.e. the resources of the facility, the nature and circumstances of the offense, and so forth will be considered.

Petitioner's assertions to the contrary notwithstanding, the guidelines were considered in making the complained-of recommendation.[2] The record submitted by petitioner reflects that BOP staff evaluated his request for RRC placement on an individual basis and in accordance with the factors set forth in § 3621(b). See Doc. 3, p. 9. The Inmate Skills Development Plan indicated that petitioner possessed the requisite daily living skills involving food management, personal hygiene and sanitation, transportation, identification and housing and family care. After

---

[2] Although the finding of the Unit Manager and Corrections Counselor at Doc 1, p. 7 that "prior charges determined his length of [RRC] placement" is unsupported by the record, there is sufficient evidence that petitioner's request for RRC placement was thereafter evaluated on a individualized basis in accordance with the 5

receiving the individualized consideration, the Unit Team "recommended 60-90 days in RRC placement to achieve the greatest likelihood of his successful reintegration into the community." *Id.*

The Warden's September 1, 2009, response to petitioner's grievance (the BP-9 found at Doc. 1, p. 6) also noted that RRC placement decisions are ". . . made on an individual basis in every inmate's case, according to new criteria in the Act." Doc. 5, p. 37. The Warden noted that petitioner's sixty to ninety day RRC recommendation was based on the Unit Team's determination that petitioner had ". . . an established release residence, ample community resources, and [had] not demonstrated satisfactory institutional adjustment . . ." and so he denied petitioner's request. *Id.* The Warden's response informed petitioner of his right to appeal the determination to the Regional Director, which right petitioner exercised on September 10, 2009. Doc. 5, pp. 39-40.

The Regional Director's November 9, 2009, response to petitioner's appeal also noted that petitioner ". . . received an individualized review under the Act on July 14, 2009[,]" and that, based on a review of all factors identified in the act and repeated in the response, petitioner would be referred for a sixty to ninety day RRC placement. Doc. 5, p. 46. The Regional Director's response also informed petitioner of his right to appeal the determination to the Bureau of Prisons, Administrative Remedy Section, which right petitioner exercised on November 23, 2009. Doc. 5, p. 48. The record is devoid of the disposition following appeal to the Administrative Remedy Section of the BOP.

In other words, the available evidence establishes that the prison authorities complied

---

factors set forth in 18 U.S.C. §3621(b). See Doc. 3, p. 9, Doc. 5, p. 37, Doc. 5, p. 46.

with the requirements of 18 U.S.C. §§ 3621 and 3624 in making their recommendation, and thus petitioner, who bears the burden of proof as to this issue, has not established that his custody violates the Constitution or laws of the United States.

The Second Chance Act does not mandate RRC placement for the full twelve months; indeed, it only requires the BOP to consider the inmate's request in accordance with the Act. See, e.g., *Reid v. Dewalt*, 2009 WL 383404, at *6 (E.D.Ky. Feb. 11, 2009) (the "Second Chance Act does not . . . *mandate* that every federal prisoner is entitled to twelve-months, or even six-months, in pre-release CCC status") (emphasis supplied); *Safa v. Phillips*, 2008 WL 2275409, at *1 (N.D.W.Va. June 2, 2008) ("Inmates are not entitled to six months CCC placement, rather they are entitled to have their placement *considered* in accordance with the five factors enumerated in 18 U.S.C. § 3621(b).") (Emphasis added).

Finally it should be noted that petitioner did not specify the relief requested in his original petition for habeas corpus. However, as noted above, his amended petition specifically prayed that the Court grant his petition for *habeas corpus* and order "Warden J. P. Young . . . to release Petitioner to a Residential Reentry Center, in the State of Georgia . . . ." Doc. 5, p. 23. Such relief is not available. "That the BOP may assign a prisoner to a CCC does not mean that it must." *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 at 251. Thus, even if petitioner were to prevail, he would be entitled only to "<u>an order requiring the BOP to consider</u> – in good faith – whether or not [he] should be transferred to a CCC" on an individualized basis in light of the statutory factors. *Id.* (Emphasis added).

Therefore,

**IT IS RECOMMENDED THAT** the Petition for Writ of *Habeas Corpus* be **DENIED**

and **DISMISSED WITH PREJUDICE** because petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lake Charles, Louisiana, this 25th day of May, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE